IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDA M. BANKS,

      Plaintiff,

vs.                                                                              Civ. No. 01-363 MV/WWD

JO ANNE B. BARNHART[1],
Commissioner of Social Security,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
**Proposed Findings**

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing ("Motion"), filed November 9, 2001 **[Doc. 7]**. The Commissioner denied Plaintiff's request for a period of disability or Social Security Disability Insurance Benefits ("SSD") and Supplemental Security Income ("SSI") benefits. Plaintiff, Linda Banks, alleges a disability which commenced December 11, 1995 due to bipolar disorder, post-traumatic stress disorder and major depression. Tr. at 87. At the time of the administrative hearing, Plaintiff was 47 years old, had completed three years of college and had worked in the past as a data entry clerk, cashier/stocker and cash office worker. Tr. at 46-47, 72.

    2. The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting the hearing, the Administrative Law Judge ("ALJ") denied the

---

[1] Jo Anne B. Barnhart was appointed Commissioner of Social Security, effective November 9, 2001. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Jo Anne B. Barnhart should be substituted for Acting Commissioner Larry G. Massanari as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

application, concluding that Plaintiff is not disabled. The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. § 405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ's finding that Plaintiff's mental impairment "does not affect her ability to function in the work place is not supported by substantial evidence and is contrary to law," (2) the ALJ's "failure to accord substantial weight to the treating and consulting physicians' opinions" constituted legal error, and (3) the ALJ's finding that Plaintiff "has been noncompliant . . . and that she is not credible" is contrary to the evidence and the law. Pl.'s Mem. in Support of Mot. at 3.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 987 F.2d at 1486 (citing 42 U.S.C. § 423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At step five, the burden shifts to the Commissioner to produce evidence regarding the claimant's ability to perform other work. See Thompson, 987 F.2d at 1487 (citations omitted); Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. Plaintiff was born on March 23, 1951. Tr. at 46. The ALJ found that Ms. Banks suffered from a bipolar affective disorder and major depression during the times at issue. Tr. at 13.

8. On January 8, 1996, Plaintiff complained of increased stress at home and was prescribed Paxil for depression. Tr. at 157. On February 15, 1996, the record indicated that her "meds [were] not working," and her Paxil was increased. Tr. at 155. On April 19, 1996, a progress note described her depression as stable. Tr. at 152.

9. On November 1, 1996, a clinic note indicated that Plaintiff was late, a third time, for an appointment and would be discharged from the clinic if she continued to be late. Tr. at 203. The same note also described "recent decreased functioning with job [and] family" for the past three to four months "plus [a] lifelong history of traits meeting all criteria for Borderline Personality Disorder" except for suicidal ideation/self mutilation. Id. Plaintiff was placed on Zoloft for "depression, impulsivity and anxiety." Id.

10. On November 18, 1996, Plaintiff was assessed as "markedly ill." Tr. at 201 Plaintiff's speech was rapid and circumstantial and she complained of nervousness, anxiety, inability to concentrate and nightmares. Id. Depakote was added to her medication regime. Id.

11. On January 17, 1997, Plaintiff was assessed as having rapid cycling Bipolar Affective Disorder I, and Trazadone was prescribed. Tr. at 196. On February 14, 1997, Plaintiff reported "slightly improved concentration [and] less intense mood swings" on Depakote. Tr. at 194. The examiner noted that Plaintiff was "notably calmer," "on time" and was "showing first signs of improvement on Depakote." Tr. at 194. On February 24, 1997, a UNM Mental Health Center ("UNMMHC") Treatment Plan assessed Plaintiff's GAF at 35, and noted that her past highest GAF was 50.[2] Tr. at 187.

12. On April 15, 1997 Plaintiff reported to Dr. Park that she found it stressful having her children home for the weekend, felt confused and anxious trying to help her incapacitated mother, and felt burdened visiting her boyfriend often and keeping busy with the children. Tr. at 183. Dr. Park observed that Plaintiff was having difficulty keeping her appointments, and noted that Ms. Banks felt "overwhelmed with chores and [was having] difficulty . . . concentrat[ing] [and] remember[ing] things." Tr. at 183.

13. On April 17, 1998[3], Plaintiff and Dr. Kathryn Frazer "discussed whether to stop Depakote or not, as patient [is] barely taking it." Tr. at 227. Dr. Frazer continued the Depakote because Plaintiff felt it helped her anxiety and expressed a desire to "re-commit to taking it." Id.

14. On December 10, 1998, Plaintiff indicated that she was taking the following

---

[2] A Global Assessment of Functioning ("GAF") score of 35 indicates that an individual demonstrates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." Tr. at 136, Diagnostic and Statistical Manual of Mental Disorders, 4th ed.. A GAF score of 50 indicates "serious symptoms . . . OR any serious impairment in social, occupational, or school functioning." Id.

[3] Although the year is not visible on the transcript copy of this note, the context indicates that the year of the visit was 1998.

4

prescription medications: (1) Wellbutrin (depression), (2) Perphenazine (clear thinking), (3) Trazadone (to sleep), (4) Cogentin (side effects), (5) Vanceril inhaler (asthma), and (6) Albuterol inhaler (asthma). Tr. at 131.

15.     Plaintiff worked as a data entry clerk at Wayne State University in Michigan from 1989 to July 1994. Tr. at 72. Plaintiff worked two part-time jobs, as a cashier and cash office worker, from October/November 1994 to January/February 1995. Id. From May 1995 to December 1995, Plaintiff was employed as a cashier/stocker at Wal-Mart. Id. Plaintiff attributed the loss of her job at Wal-Mart to her illness, explaining that she was let go "because [she] couldn't perform as well as the other cashiers." Tr. at 70.[4] Plaintiff worked for several very short periods of time during 1996.[5] Tr. at 116. Plaintiff conceded that she has had a problem showing up to work on time with all of her jobs. Tr. at 476-78.

16.     The ALJ found that, although Plaintiff's impairments prevent her from returning to her past employment, "she retains the mental capacity to perform other kinds of unskilled jobs which exist in the [national and regional] economy," such as that of advertising materials distributor, parking lot attendant and busperson. Tr. at 22, 23.

*First Alleged Error*

17.     Plaintiff alleges that the ALJ found that Ms. Banks' mental impairment does not

---

[4]     At the hearing, Plaintiff explained that her termination was associated with a "downsizing" after the holidays. Tr. at 474. However, Plaintiff also testified that she "started doing things . . . like in the middle of work, I'd go in the back, and . . . start crying." Tr. at 476. Plaintiff thought she "was beginning to become more of a problem to them so I was one of the people they decided to let go." Id.

[5]     The ALJ determined that "[Plaintiff's] earnings from these short periods of employment did not constitute substantial gainful activity." Tr. at 13.

5

affect her ability to function in the work place. Pl.'s Mem. in Support of Mot. at 3. However, the ALJ determined that Plaintiff's mental impairment prohibited her from performing her past work. Tr. at 22. Moreover, the ALJ asked a vocational expert ("VE") to assume several limitations on work related abilities in order to determine whether there were available jobs that Plaintiff could perform. Tr. at 22-23. Thus, despite Plaintiff's allegation to the contrary, the ALJ did not find that Plaintiff's mental impairment has no affect on her ability to function in the work place.

*Past Work History*

18. Plaintiff alleges that the ALJ improperly considered Ms. Banks' past work history in arriving at his finding that she has "no more than a moderate impairment in her ability to . . . perform simple job instructions." Tr. at 19-20. The ALJ found that Plaintiff "has demonstrated an ability to [understand, remember, and carry out simple instructions] for many years," because over the course of the twenty year history of her bipolar disorder, "she managed to produce a fairly stable and consistent income for quite a few of those years." Tr. at 19. Thus, the ALJ relied on Plaintiff's past work history, at least in part, in determining that Plaintiff had no more than a moderate impairment in this area.

19. The ALJ may properly consider Plaintiff's prior work history as one factor in his decision making process. See 20 CFR § 416.929(c)(3); see also, Roberts v. Apfel, 222 F.3d 466, 468-69 (8th Cir. 2000) (finding that the ALJ properly considered Plaintiff's work history as relevant evidence). Plaintiff cites to Butler v. United States Dept. of Health & Human Servs., No. 93-6025 (10th Cir. Oct. 22, 1993) (unpublished) in support of her assertion that the ALJ failed to conduct a proper analysis of Plaintiff's past work. However, the issue in Butler centered on an ALJ's assessment of a claimant's ability to return to her past work. Moreover, the record indicates

6

that the ALJ did consider the factors discussed in Butler.[6]  Thus, I find that the ALJ did not err when he considered Plaintiff's work history as relevant evidence in reaching his determination regarding Plaintiff's ability to perform simple job instructions.

*New Evidence*

20.     Plaintiff contends that the evidence she submitted to the Appeals Council proves that the ALJ's decision is not supported by substantial evidence.  In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the record as a whole, including the additional materials submitted to the Appeals Council. See O'Dell v. Shalala, 44 F.3d 855, 858, 859 (10th Cir.1994).  Here, I find that the additional evidence submitted to the Appeals Council calls into question the ALJ's conclusion with respect to Plaintiff's ability to deal with work stress.

21.     The ALJ based his conclusion that Plaintiff is capable of dealing with the "routine changes in a work setting" primarily on Plaintiff's past work history.  Tr. at 21 (noting that Plaintiff "was functional for many years and handled the stress of working as an exotic dancer in a topless club, . . . a data entry clerk and retail cashier"). The ALJ also based his finding on Dr. Dempsey's estimation that Plaintiff is no more than mildly impaired in carrying out the activities of daily living. Id.

22.     Although Plaintiff's past work history and her ability to manage the activities of daily living are factors that support the ALJ's conclusion, it is relatively weak evidence. Plaintiff has not been substantially gainfully employed since she lost her job at Wal-Mart in 1995.  The

---

[6] The factors listed in Butler include the length of time on the job, the reasons for leaving, and the likelihood, frequency, and severity of relapses in the claimant's mental illness. See Butler, No. 93-6025 at 8.

relevance of Plaintiff's past work history as evidence of her current abilities necessarily declines with the passage of time.[7] Moreover, as previously noted, Plaintiff's employment at Wal-Mart was apparently not problem-free.[8] Although an ability to handle the activities of daily living may be evidence that Plaintiff is capable of dealing with some stress, such stress does not necessarily equate to the stress experienced in the work place. Finally, the record indicates that Plaintiff's ability to carry out the activities of daily living is not entirely unimpaired.

23. The additional evidence that Plaintiff submitted to the Appeals Council included a series of UNMMHC Psychosocial Rehabilitation Activity Sheets ("Rehab Sheets") that assessed Plaintiff in various areas. Twelve Rehab Sheets, spanning a period of time from September 25, 1998 through March 23, 1999, consistently rated Plaintiff's ability to manage stress effectively as "low," with the exception of December 5, 1998, at which time Plaintiff's ability was rated as "moderate."[9] See Tr. at 347, 348, 350-53, 355, 356, 358, 359, 361, 366. A narrative note indicated that Plaintiff was in "acute distress" at the beginning of her visit on December 2, 1998. Tr. at 285. A Rehab Sheet dated December 26, 1998 observed that Plaintiff was "upset and nearly in tears over holiday stressors." Tr. at 356.[10] This evidence severely undermines a finding that

---

[7] Plaintiff's past history of working in a topless club is particularly weak evidence because the record does not indicate when, how long, or under what conditions she was employed.

[8] Plaintiff stated that "in the middle of work, I'd go in the back, and . . . start crying." Tr. at 476.

[9] The possible ratings are low, moderate and high.

[10] I note that some of the records submitted to the Appeals Council refer to Plaintiff's failure to comply with her prescribed medications and/or treatment regime. See, e.g., Tr. at 285 (indicating Plaintiff may have missed five days of medication); Tr. at 347 (noting that Plaintiff "continues to miss approx[imately] half of her classes"); Tr. at 352 (Plaintiff reports being off her medications recently); Tr. at 356 (indicating that Plaintiff is "almost never" compliant with

8

Plaintiff's ability to deal with work place stress is "limited but satisfactory."

24. In light of the additional evidence submitted to the Appeals Council, I find that the hypothetical to the VE, assuming an individual with a "fair"[11] ability to deal with work stress, is not substantially supported by the evidence. The ALJ must provide complete and accurate hypotheticals regarding Plaintiff's limitations. Thus, this case should be remanded so that the Commissioner may reconsider the evidence and reassess Plaintiff's ability to deal with work stress. In addition, further VE testimony should be elicited in light of the Commissioner's reassessment of Plaintiff's ability to deal with work stress. See Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991)

*Second Alleged Error*

25. Plaintiff alleges that the ALJ "fail[ed] to accord substantial weight to the treating and consulting physicians' opinions." Pl.'s Mem. in Support of Mot. at 3. "A treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions." Castellano v. Secretary of Health & Hum. Servs., 26 F.3d 1027, 1029 (10th Cir.1994); 20 C.F.R. § 404.1527(a)(2). However, the ALJ may disregard the opinion of a treating physician if he articulates specific, legitimate reasons for doing so. Diggdon v. Apfel, 189 F.3d 477 (unpublished table opinion) (10th Cir. Okla.1999), at **4 (citing Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.1987)).

---

treatment).

[11] The ALJ defined "fair" as a limited but satisfactory ability, and "poor" as a seriously limited but not precluded ability. Tr. at 22-23.

26. In addition, although the ALJ considers the opinions from examining sources on such issues as the Plaintiff's ability to work and the application of vocational factors, "the final responsibility for deciding these issues" rests with the ALJ. 20 C.F.R. § 404.1527(e)(1), (2). Moreover, it is clearly within the ALJ's authority to reject a physician's opinion which is unsupported by the objective evidence of record. Castellano, 26 F.3d at 1029; see also Talley v. Sullivan, 908 F.2d 585 (10th Cir. 1990).

*Dr. Fraser's Opinion*

27. On August 17, 1998, one of Plaintiff's treating physicians, Kathryn J. Fraser, MD, opined that Ms. Banks "has not been able to work because of her psychiatric problems and would likely need more stability to consider even part-time, supported employment." Tr. at 224. Dr. Fraser noted that due to Ms. Banks' "difficulty with compliance . . . it is difficult to assess her response to medications and treatment." Id.

28. The ALJ noted that Ms. Banks "generally responded positively when she was compliant . . . [and] experienced an increase in negative symptoms" when she was noncompliant. Tr. at 21. The ALJ further found that Plaintiff was capable of complying with her treatment regime. Id. Finally, the ALJ rejected Dr. Fraser's opinion regarding Plaintiff's ability to work, "[b]ased on the overall record." Id.

29. I find that the ALJ failed to provide specific, legitimate reasons for rejecting Dr. Fraser's opinion. The ALJ's reference to "the overall record" is vague and fails to highlight any specific evidence on which the ALJ bases his disagreement with Dr. Fraser. Moreover, the ALJ's finding with respect to Plaintiff's ability to comply with her treatment cannot form a legitimate basis for rejecting Dr. Fraser's opinion, because Dr. Fraser did not discuss how Plaintiff's

10

compliance with treatment would affect her ability to work.

30. The ALJ's failure to provide specific, legitimate reasons for rejecting Dr. Fraser's opinion is contrary to law. Accordingly, this matter should be remanded for consideration of Dr. Fraser's opinion, with instructions that should the ALJ again reject Dr. Fraser's opinion, to provide specific, legitimate reasons for doing so.

*Dr. Dempsey's Opinion*

31. Plaintiff also contends that the ALJ improperly substituted his opinion for that of Michael Dempsey, M.D., with regard to Plaintiff's level of impairment in the area of concentration, persistence and pace. Using the A.M.A. Guides to Impairment, Dr. Dempsey estimated Plaintiff's concentration, persistence and pace to be "markedly impaired," and opined that she "probably would not be able to . . . be gainfully employed." Tr. at 245. Dr. Dempsey apparently based this conclusion on Plaintiff's "pressured, tangential speech" and an observation that Plaintiff "is barely functional at the present time, with minimal demands." Tr. at 245.

32. The ALJ stated that the basis for Dr. Dempsey's finding with respect to Plaintiff's concentration, persistence and pace "is not clear." Tr. at 19. The ALJ implied that Dr. Dempsey's conclusion is inconsistent with other examination findings. Tr. at 19 (noting Dr. Dempsey's observation that "the claimant did well on the Jacob's test of mental functioning," the estimation of Plaintiff's ability to handle the activities of daily living as mildly impaired, and the assessment that Plaintiff's bipolar disorder was moderately well-controlled with medication). Tr. at 19. The ALJ also implied that Dr. Dempsey's opinion is not supported by other evidence in the record. Tr. at 19-20 (concluding that, "[b]ased on [Plaintiff's] overall level of functioning," she is no more than moderately impaired in her "ability to concentrate on tasks and perform simple job instructions").

11

33. However, while I find that the ALJ rejected Dr. Dempsey's opinion that Plaintiff is incapable of maintaining gainful employment, the basis of his rejection is not entirely clear. For this reason, and in light of the fact that this matter is being remanded for consideration of other evidence that may affect the context in which this opinion is considered, the Commissioner should also reconsider Dr. Dempsey's opinion. In the event that the Commissioner again rejects Dr. Dempsey's opinion, the basis for such rejection should be clearly stated.

### *Third Alleged Error*

*Compliance*

34. Plaintiff alleges that the ALJ erred when he found that Ms. Banks' noncompliance suggested a "lack of judgment" and when he failed to conduct an appropriate compliance analysis. See Pl.'s Mem. in Support of Mot. at 9; Pl.'s Reply at 2. The record clearly indicates that Plaintiff arrived late or failed to show up for some appointments and sometimes failed to take her medications as prescribed. In light of the evidence presented in this matter, I find Plaintiff's arguments regarding the issue of compliance to be without merit.

35. First, although the ALJ noted that the Plaintiff sometimes failed to comply with her prescribed treatment, he did not deny Plaintiff's application based on that reason. The ALJ noted that Plaintiff appeared to benefit from compliance with prescribed treatment and suffered negative effects when she failed to adhere to treatment. Nevertheless, because the ALJ did not find that Plaintiff's noncompliance resulted in an inability to work, he was not obligated to inquire as to whether Plaintiff's compliance would restore her ability to work. See 20 C.F.R. § 404.1530(a)-(b), 416.930(a)-(b); Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985) ("Benefits will be denied a claimant who fails without good cause to follow treatment prescribed by her physician if it can

restore her ability to work."). For the same reason, the ALJ was not obligated to determine whether Plaintiff's noncompliance was justifiable or whether she had "good cause" to refuse her prescribed treatment.

36. Second, it may well be that noncompliance is symptomatic of an individual's illness. However, in this case, there is no medical evidence indicating that Plaintiff's ability to comply with her treatment regime is beyond her control. None of Plaintiff's health care providers stated that Ms. Banks is incapable of adhering to her treatment regime. Indeed, Plaintiff's treating physician, Dr. Fraser, stated that one of Plaintiff's strengths is that she "can be dependable." Tr. at 228. The record is replete with numerous attempts by various health care providers encouraging and/or warning Plaintiff to comply with her treatment. Plaintiff has responded to warnings by showing up for appointments on time. Consequently, I find that substantial evidence supports the ALJ's conclusion that Plaintiff is capable of adhering to her treatment regime.

*Credibility*

37. The Plaintiff alleges that the ALJ improperly assessed Plaintiff's credibility when he addressed "contradictory testimony" regarding Plaintiff's ability to interact socially. Tr. at 20. I find that Plaintiff's argument is moot on this point, because even assuming that the ALJ improperly resolved the credibility issue, the ALJ's finding that "Ms. Banks has adequate social skills to function in a routine work environment" is substantially supported by the evidence. Tr. at 20-21.

**Recommended Disposition**

Based on the foregoing, I recommend that Plaintiff's Motion **[Doc. 7]** be GRANTED IN PART and that this matter be reversed and remanded to the Commissioner for additional proceedings consistent with this opinion to include: (1) reconsideration of the evidence and

13

reassessment of Plaintiff's ability to deal with work stress, (2) presentation of appropriate hypotheticals to a vocational expert in light of the reassessment of Plaintiff's ability to deal with work stress, (3) reconsideration of Dr. Fraser's opinion and Dr. Dempsey's opinion, (4) provision of specific, legitimate reasons if Dr. Fraser's and/or Dr. Dempsey's opinions are rejected, (4) and (5) reassessment of Plaintiff's ability to perform other work in light of the additional information obtained above.

Timely objections to the foregoing proposed findings and recommended disposition may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE